IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY J. AGEE | ) |
| | ) |
| v. | ) No. 3:12-0958 |
| | ) |
| NANCY A. BERRYHILL[1] | ) |
| Acting Commissioner of Social Security | ) |

To: The Honorable Kevin H. Sharp, Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") as provided under Title II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 20), to which Defendant has filed a response (Docket Entry No. 24). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 29), to which Defendant has filed a surreply (Docket Entry No. 33).

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 20) be **GRANTED,** the decision of the Social Security Administration be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this Report.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. INTRODUCTION

Plaintiff filed an application for SSI on May 1, 2008 and filed an application for a period of disability and DIB on May 5, 2008. *See* Transcript of the Administrative Record (Docket Entry No. 8) at 76-77.[2] She alleged a disability onset date of June 14, 2007, which was later amended to January 1, 2010. AR 26, 28, 76-77. Plaintiff asserted that she was unable to work because of back pain and kidney stones, and later claimed that she suffered from depression. AR 52-53, 88-89, 98-99.

Plaintiff's applications were denied initially and upon reconsideration. AR 78-79, 84, 94-99. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Roy J. Richardson on June 11, 2010. AR 35. The ALJ subsequently denied the claim. AR 23-25.[3] The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 20, 2012 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision and made the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] Neither the Notice of Decision nor the ALJ's opinion provides a date of issuance. AR 23, 34.

2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the amended onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, morbid obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds occasionally. The claimant would be unable to lift/carry any objects frequently, stand/walk more than 5 hours in an 8-hour workday, and bend/twist. The claimant would be able to sit 8 hours in an 8-hour workday. The claimant would be able to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant was born on August 5, 1968 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

***

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, her amended onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 28-34.

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of*

*Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the

claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an

inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If the claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 28-34.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by: (1) failing to give controlling weight to the assessment of the treating physician; (2) failing to properly assess Plaintiff's credibility; and (3) failing to find that Plaintiff's asthma represents a severe impairment.[4] DE 21 at 39, 51, 54. Plaintiff therefore requests that the Commissioner's decision be reversed and benefits awarded, or, alternatively, that this case be remanded for further consideration at a new hearing. *Id*. at 54.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision

---

[4] Plaintiff additionally lists as an assertion of error: "The ALJ erred in rejecting [Plaintiff's] subjective complaints because she failed to seek treatment without first considering whether this failure resulted from an inability to afford treatment." DE 21 at 54. Because this pertains to Plaintiff's credibility, however, the Court will address this argument when evaluating the second assertion of error.

is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court addresses Plaintiff's assertions of error below.

**1. The ALJ's consideration of the treating physician's opinion.**

Plaintiff contends that the ALJ committed reversible error by failing to give controlling weight to the opinion provided by Dr. Ted Hill, her treating physician. Dr. Hill completed an assessment of Plaintiff's work-related abilities and limitations on May 25, 2010, which contained severe physical restrictions related to Plaintiff's alleged back pain. AR 908-11. Plaintiff argues that because she had treated with Dr. Hill on five occasions prior to completion of this assessment, Dr. Hill possessed a better understanding of Plaintiff's condition that bolsters his opinion that Plaintiff's lower back pain represents a disabling condition. DE 21 at 39-40. Plaintiff also claims that the ALJ failed to provide good reasons for rejecting Dr. Hill's assessment in violation of 20 C.F.R. § 404.1527(c)(2), and specifically addresses how each of the reasons provided by the ALJ was purportedly inadequate to reject Dr. Hill's opinion. *Id*. at 40, 42-50. Plaintiff additionally notes that the opinion of consultative examiner Dr. Roy Johnson, which was given an undefined amount of weight, was based on a single visit that involved no review of any of Plaintiff's medical records. *Id*. at 49.

The opinion rendered by Dr. Hill on May 25, 2010 ("the May 25 opinion") is very restrictive with respect to Plaintiff's exertional and nonexertional capacities. He opined that Plaintiff would only be able to sit for two hours "before requiring a rest or an alternate position,"

9

would not be able to stand or walk for any length of time, would be required to lie down for one hour per workday, and would be forced to miss more than four days of work per month. AR 908-11. Notably, Dr. Hill disregarded the section of the report that prompted him to describe the patient's medical history, clinical findings, laboratory findings, diagnoses, and his treatment. AR 911. Dr. Hill also indicated that he completed the report based on Plaintiff's answers to the questions contained therein, which he posed to her. AR 905. Therefore, the limitations contained in the May 25 opinion actually represent *Plaintiff's* estimation of her physical restrictions.

On July 29, 2010, Dr. Hill completed an additional report ("the July 29 opinion"), which prompted him to provide more specific responses regarding the extent of Plaintiff's alleged disability. For example, the report asked Dr. Hill whether he agreed with a letter written by a physician assistant Patrick Stansbury on March 26, 2010 in which Mr. Stansbury stated that an MRI demonstrating facet hypertrophy at the L4-5 level and a thickened posterior longitudinal ligament "could be the source of [Plaintiff's] pain." AR 939. Dr. Hill confirmed that the findings from the referenced MRI "can be a source of back pain." AR 939. In response to a similar question regarding "pseudoarthritis," Dr. Hill stated, "I agree that a pseudoarthrosis can cause back pain and I do think it is a contributory cause of her pain." AR 940. When presented with some of the findings from three MRI reports and asked to "discuss what light these reports shed on the question of what is causing [Plaintiff's] low back pain," Dr. Hill stated that "based on these x-ray reports, [Plaintiff] has a chronic degenerative back disease that can cause chronic back pain and disability." AR 940. Dr. Hill additionally opined that Plaintiff's attention and concentration would be impaired to the extent that she would be "off task" for at least 25% of each workday. AR 942.

When a treating physician's opinion is not accorded controlling weight, the ALJ must consider several factors in deciding the amount of weight the opinion will receive, including the length of the treatment relationship, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c)(2)-(5).

Plaintiff notes that Dr. Hill treated her five times over the span of five months before rendering the May 25 opinion. DE 21 at 39; AR 939. During her initial visit, Dr. Hill diagnosed Plaintiff with "back pain over lumbar area." AR 726. He also ordered an MRI of Plaintiff's lumbar spine, which demonstrated no significant change in Plaintiff's previously identified degenerative changes at the L3-4 and L4-5 levels when compared to a prior MRI performed in 2007. AR 732-33. After reviewing this MRI, Dr. Hill continued to diagnose Plaintiff with "back pain" or "low back pain" over the course of his five months of treatment. AR 720, 722, 724, 905. There was no other imaging taken of Plaintiff's lumbar spine. During his final documented visit with Plaintiff in May of 2010, Dr. Hill prescribed pain medication, encouraged her to "try to arrange an epidural steroid injection," and encouraged her to exercise. AR 906.

With respect to the consistency and supportability of the treating source's opinion, the ALJ noted that Dr. Hill's office notes and his "minimal objective findings" did not support the severe limitations contained in the May 25 opinion. AR 32. This includes apparent contradictions in the opinion, including a determination that Plaintiff would not be able to stand or walk for any length of time, and would only be able to sit for one hour during an eight-hour workday, yet would be able to lift and carry objects weighing between six and 10 pounds for up to one hour. AR 908.[5] The ALJ also referenced Dr. Hill's failure to provide any support for these limitations,

---

[5] It is certainly unclear to the Court how an individual who is rendered completely immobile during a workday would be able to lift and carry any amount of weight.

and discussed Dr. Hill's own admission that the May 25 opinion was actually Plaintiff's assessment of her physical limitations. AR 32, 905. The Court therefore finds that the ALJ's decision to reject the May 25 opinion is supported by substantial evidence, as it does not contain any limitations recommended by Dr. Hill. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) (finding that a physician's report that merely repeats a claimant's assertions about her level of pain and functional capacities is not objective medical evidence).

However, the July 29 opinion appears to represent Dr. Hill's actual opinion regarding Plaintiff's functional limitations. In response to pointed questions regarding imaging of Plaintiff's lumbar spine, Dr. Hill stated that the findings from the January 22, 2010 MRI indicate "degenerative back disease" that "can be a source of pain," and that pseudoarthritis was a "contributory cause" of her alleged pain. AR 939-40. Dr. Hill also opined that Plaintiff will need to take between three and four breaks during a workday, each lasting between 10 and 15 minutes, will need to sit with her legs elevated for 75% of the workday, and will be "off task" for 25% or more of the workday. AR 942. As discussed by the ALJ, however, Dr. Hill did not discuss whether Plaintiff's symptoms were consistent with his objective medical findings, test results, and diagnosis of "low back pain." AR 32, 941. The ALJ also noted that Plaintiff actually showed some improvement in her range of motion between 2008 and 2010, specifically in the area of extension. AR 32.

Despite these stated reasons for rejecting Dr. Hill's opinion, the Court concludes that this case should be remanded for an additional hearing based on the ALJ's failure to specify the weight accorded to the opinion of the treating physician. It is true that the Sixth Circuit has held that an ALJ's failure to explicitly indicate the weight given to a treating physician's opinion is harmless error as long the goal of providing good reasons for rejecting the opinion has been met.

*Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006). However, the explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1000 (6th Cir. 2011)). The ALJ discussed in detail his reasons for not granting Dr. Hill's opinion controlling weight, suggesting that he rejected the opinion outright. AR 31-32. Yet the ALJ concluded that Plaintiff's severe impairments included morbid obesity and depression (AR 28), both of which were diagnosed by Dr. Hill. AR 913, 941, 946. Neither of the other two physicians identified in the opinion even reference these conditions. Moreover, the ALJ determined that depression constituted a severe impairment despite claiming that Dr. Hill's diagnosis of depression was "not well documented in his treatment records[.]" AR 32. He instead based his finding that depression represented a severe impairment on a Vanderbilt University Medical Center note, dated August 26, 2008, which indicated merely that Plaintiff exhibited a "somewhat withdrawn affect." AR 32, 893-94. However, given that the attending physician identified in that note only addressed treatment of Plaintiff's urethral stone, and provided no prognosis or other opinion as to the severity of Plaintiff's "withdrawn affect," it is unclear how the ALJ could have determined that depression rose to the level of a severe impairment without relying on the opinion of Dr. Hill.

The ALJ's opinion is further complicated by its failure to explain the weight given to Dr. Johnson, the State agency physician who examined Plaintiff on July 30, 2008. The physical limitations contained in the assigned RFC suggest that Dr. Johnson's opinion was given great weight, as the RFC limitations are identical to those recommended by Dr. Johnson. AR 29, 612. The Court acknowledges that the ALJ was entitled to rely on the opinion of a State agency

physician in concluding that Plaintiff was not disabled. *Overholt v. Astrue*, No. 3:07-cv-322, 2008 WL 2645662, at *9 (E.D. Tenn. July 2, 2008) (citing *Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004)). However, Dr. Johnson's report explicitly states that Plaintiff's "work activities should not exceed any restrictions placed on her by treating physicians." AR 612. In this case, the treating physician provided two opinions regarding Plaintiff's functional limitations, although the May 25 opinion appears to represent little more than Plaintiff's assessment of her functional limitations, as discussed *supra*. However, even discounting the May 25 opinion and relying solely on the July 29 opinion rendered by Dr. Hill, Dr. Johnson's statement that no limitations implemented by a treating physician should be exceeded effectively endorses the restrictions requiring Plaintiff to elevate her legs for 75% of the workday and take three to four breaks per workday, with each break lasting between 10 and 15 minutes, as delineated in the July 29 opinion. AR 942. The assigned RFC makes no such accommodations, thus exceeding the restrictions recommended by Plaintiff's treating physician, which is contrary to Dr. Johnson's report.

Additionally, as discussed in Plaintiff's brief, Dr. Johnson's opinion was issued approximately 17 months before Plaintiff even began treating with Dr. Hill. AR 611, 726. In fact, Dr. Johnson was unable to review any of Plaintiff's medical records prior to issuing his opinion, as indicated by the ALJ's statement that his determination that Plaintiff is not disabled "is based on updated evidence that was not available for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency physician." AR 32. Failure to review a Plaintiff's complete medical history, by itself, does not represent reversible error, as such a holding would permit a claimant to simply seek treatment following completion of a consultative examination and later argue that the consultative examiner's findings failed to account for her

14

subsequent treatment. *See Grant v. Colvin*, No. 3:14-cv-399, 2015 WL 4713662, at *13 (E.D. Tenn. Aug. 7, 2015) ("If the Court were to adopt the Plaintiff's argument, any consultative examiner should be summarily dismissed if their opinion was submitted without full review of a plaintiff's medical record or predated any treatment records."). Here, however, Dr. Johnson did not have the opportunity to review the May 25 opinion, the July 29 opinion, the January 22, 2010 MRI findings, or the office notes documenting Plaintiff's treatment with Dr. Hill over the course of several months. Dr. Johnson was thus deprived of the ability to base his decision on "a complete case record … which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6p, 1996 WL 374180, at *3. *See also Blakley,* 581 F.3d at 409 (reversing ALJ's decision that relied on assessment of a consultative examiner who did not have access to assessments from treating sources or ongoing treatment records and notes from those treating sources).

Defendant does not respond directly to this argument, but instead emphasizes how the medical evidence supports the ALJ's decision to reject Dr. Hill's opinion. DE 24 at 17-19. This does not, however, excuse the ALJ's apparent decision to accord Dr. Johnson's opinion controlling weight while disregarding Dr. Johnson's recommendation that none of the limitations imposed by Plaintiff's treating physicians be exceeded. AR 612. The ALJ simply ignored this portion of Dr. Johnson's opinion and utilized the remaining findings in Dr. Johnson's report to formulate the RFC, even though the limitations contained in the report allowed for greater functional capacities than were endorsed by Dr. Hill. AR 29-30, 939-42. While the ALJ is not required to discuss every piece of evidence in the record, he may not "cherry-pick the record to support [his] conclusions," but must instead "consider the evidence taken as a whole." *Davis v.*

*Colvin*, No. 2:10-cv-0088, 2015 WL 3504984, at *6 (M.D. Tenn. May 28, 2015) (quoting *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984)).

When an ALJ fails to mention rejected evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Sec'y of Health & Human Servs.*, No. 86-5875, 1988 WL 34109, at *2 (6th Cir. April 18, 1988) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Here, the ALJ disregarded a critical part of Dr. Johnson's opinion but gave the remaining portion of the assessment complete deference. The ALJ also appears to have completely rejected Dr. Hill's opinion, yet he concluded that morbid obesity and depression represented severe impairments even though no other physician discussed in the opinion made reference to these conditions. Such inconsistency is not insignificant, as it prevents a claimant from being able to understand the disposition of her case. *Wilson*, 378 F.3d at 544. The ALJ's lack of specificity as to the weight accorded to the opinions of both Dr. Hill and Dr. Johnson thus "gives rise to a level of confusion that is avoidable" when 20 C.F.R. § 404.1527(c) is properly applied. *Peacock v. Astrue*, No. 2:05-cv-0076, 2009 WL 3615011, at *15 (M.D. Tenn. Nov. 2, 2009). *See also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) ("The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by 'good reasons' that are 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.') (quoting SSR 96-2p).

Based on the foregoing, the Court therefore concludes that the ALJ committed reversible error by failing to adequately explain the weight given to Dr. Hill's July 29 opinion in violation

of 20 C.F.R. § 404.1527(c)(2), and recommends that this matter be remanded for a rehearing and additional consideration of Plaintiff's RFC.

**2. Plaintiff's credibility.**

Plaintiff next argues that the ALJ erred by making a credibility determination that was "the kind of boilerplate, conclusory opinion" barred by relevant regulations. DE 21 at 52. Plaintiff also contends that the ALJ improperly rejected her subjective complaints based on her failure to seek treatment from October of 2007 through January of 2010, despite the fact that she was unable to afford treatment during that time due to a lack of health insurance and income. *Id*. at 54.

As long as the ALJ cites substantial and legitimate evidence to support his factual conclusions, the Court must not "second-guess" his credibility determination. *Ulman v. Comm'r of Soc. Sec*., 693 F.3d 709, 714 (6th Cir. 2012). The ALJ in this case discounted Plaintiff's credibility in part due to her "failure to participate in physical therapy as prescribed" by Dr. Roy Terry in July of 2007. AR 31. Defendant echoes this argument in its brief, noting that Plaintiff had not begun physical therapy as of July 31, 2007. DE 24 at 27. However, Dr. Terry specifically indicated that Plaintiff was unable to attend physical therapy due to the judgment of the case adjuster who was administering her ongoing workers' compensation claim, and even chided the case adjuster for doing so:

> I would note that she does have back problems and still has back pain. I would recommend two weeks of physical therapy to see if this is going to be helpful as we had recommended previously. Her case adjuster, however, stated that he felt that waiting until the MRI study was done would be reasonable. I think we have lost a week of time that would have been helpful in her case. We will see her in two weeks. I asked that the therapy be reinstated and proceed from there.

AR 477. The Court also notes that there are several records indicating that Plaintiff attended physical therapy in July and August of 2007 (AR 516-22), including a note from August 6, 2007

demonstrating that, as noted by Dr. Terry, the workers' compensation insurance carrier "will not authorize any additional visits [at] this time." AR 516. Coupled with Plaintiff's stated financial hardships (AR 40), Plaintiff's inability to pay for physical therapy can hardly be considered a good reason for discounting her credibility. *See Dooley v. Comm'r of Soc. Sec.*, No. 16-5146, 2016 WL 4046777, at *5 (6th Cir. July 28, 2016) ("[B]efore drawing a negative inference from an individual's failure to 'seek or pursue regular medical treatment,' the ALJ must consider 'any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.'") (citing SSR 96-7p).[6]

Nevertheless, the Court declines to make a finding as to the ALJ's credibility determination because, if the instant Report and Recommendation is adopted, this case will be remanded for a rehearing based on the ALJ's violation of the treating physician rule, at which point a new credibility determination will be made.

**3. Plaintiff's asthma.**

Plaintiff finally argues that the ALJ erred by failing to conclude that her asthma represents a severe impairment. DE 21 at 54. Plaintiff does little more than state that her asthma is "well-documented and longstanding" (*Id*. at 54) and recite various medical records indicating that Plaintiff has been diagnosed with asthma. *Id*. at 18-19, 28, 36-37. This ignores prevailing case law indicating that the mere diagnosis of a condition does not establish a work-related limitation. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). *See also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (internal citation

---

[6] On March 28, 2016, SSR 96-7p was superseded by the implementation of SSR 16-3p. However, because Plaintiff's complaint was filed in September of 2012, SSR 96-7p applies to this claim.

omitted); *Higgs*, 880 F.2d at 863 ("The mere diagnosis … of course, says nothing about the severity of the condition."). However, the Court again abstains from ruling on this assertion of error in light of the undersigned's recommendation that this case be remanded for an additional hearing.

## V. RECOMMENDATION

For the above stated reasons, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 20) be GRANTED, and that the Commissioner's decision be REVERSED AND REMANDED for further proceedings consistent with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge